McMahon, C.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| EJS CAPITAL MANAGEMENT, LLC, ALEX VLADIMIR EKDESHMAN AND EDWARD J. SERVIDER, | ) ) ) ) |
| Defendants. and | ) ) ) |
| ALISA EKDESHMAN, EXECUTIVE SERVICES OF FLORIDA LLC, EXECUTIVE MANAGEMENT OF MONTANA, INC., AND MICHAEL VILNER, | ) ) ) ) ) ) |
| Relief Defendants. | ) ) |

Case No. 14 CV 3107 (CM)

ECF Case

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12|18|15

**[PROPOSED ORDER] FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS EJS CAPITAL MANAGEMENT, LLC AND ALEX VLADIMIR EKDESHMAN AND RELIEF DEFENDANTS EXECUTIVE SERVICES OF FLORIDA LLC AND EXECUTIVE MANAGEMENT OF MONTANA INC.**

On May 1, 2014, the Commodity Futures Trading Commission ("Commission" or

"Plaintiff") filed a Complaint charging defendants EJS Capital Management, LLC ("EJS") Alex

Vladimir Ekdeshman ("Ekdeshman") and Edward J. Servider ("Servider") (collectively,

"Defendants") with fraudulently soliciting more than $2 million from at least 90 customers in

connection with agreements, contracts or transactions in foreign currency ("forex"),

misappropriation of customer funds, and issuing false account statements to customers in violation of Sections 4b(a)(2)(A)-(C) of the Commodity Exchange Act ("the Act"), 7 U.S.C. § 6b(a)(2)(A)-(C) (2006 & Supp. V 2011), and Regulation § 5.2(b), 17 C.F.R. § 5.2(b), failing to register as a Commodity Trading Advisor ("CTA") in violation of in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006), and Regulation § 5.3(a), 17 C.F.R. §§ 5.3(a), and CTA fraud in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1). The Commission also charged Ekdeshman with violating a prior Order issued in *CFTC v. Paramount Management, LLC and Alex Vladimir Ekdeshman*, No. 13-Civ. 4436 (CM) (SDNY) ("Paramount") in violation of Section 6c(a) of the Act, as amended, 7 U.S.C.§ 13a-1(a) (2006 and Supp. V 2011).

In addition, the complaint claimed that Relief Defendants Alisa Ekdeshman, Executive Services of Florida, LLC ("Executive Services"), Executive Management of Montana, Inc. ("Executive Management") and Michael Vilner, who were not charged with violations of the Act or Regulations, received funds from Defendants, to which Relief Defendants held no legitimate interest or entitlement and which were derived from Defendants' fraudulent and violative acts.

On May 1, 2014, the Court entered an Order Granting Plaintiff's *Ex Parte* Application for Statutory Restraining Order, Expedited Discovery, Asset Freeze, Order to Show Cause Regarding Preliminary Injunction, and Other Equitable Relief against Defendants and Relief Defendants (the "SRO"), that among other things, froze assets held in the name of or under the control or management of Defendants and, up to the amounts set forth in the SRO, of the Relief Defendants..

As reflected in the U.S. Marshal's Process Receipt and Return filed on May 9, 2014, the summonses and the Complaint along with the SRO Application, the Memorandum of Law in Support of a Statutory Restraining Order ("SRO Memorandum"), the Rix Declaration and the

SRO were served personally on Ekdeshman on May 2, 2014 pursuant to Rule 4(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). On May 13, 2014, the summonses and the Complaint along with the SRO Application, the SRO Memorandum, the Rix Declaration and the SRO were served on an agent of EJS with proof of service filed on July 15, 2014 pursuant to Rule 4(h) of the Fed. R. Civ. P. On May 6, 2014, Relief Defendants Executive Services and Executive Management were properly served with the summonses, Complaint, SRO Application, SRO Memorandum, the Rix Declaration and the SRO pursuant to Rule 4(h)(1)(B) of the Fed. R. Civ. P. by service upon Relief Defendants Executive Services' and Executive Management's counsel by agreement.

On May 12, 2014, the Court held a hearing on the Commission's motion by order to show cause for preliminary injunction and other equitable relief ("Show Cause Motion"), as well as to determine if a permanent injunction should be issued against Defendant Ekdeshman for a Contempt of Court claim based on a Consent Order issued in the Paramount matter. In Paramount, Ekdeshman settled the claims and entered into a Consent Order in which Ekdeshman was permanently enjoined from, among other things, (1) cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person other than on or subject to the rules of a designated contract market of Section 4b(a)(2)(A)-(C) of the Act, as amended 7 U.S.C. § 6b(a)(2)(A)-(C) (2006 & Supp. V. 2011) and, in relevant part, (2) soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any forex contracts (Consent Order entered September 9, 2013, Section IV, Paragraph 52(e)). In the Paramount Consent Order, Ekdeshman was barred from the conduct he has participated in the instant matter, i.e. cheating

3

and defrauding other persons in connection with the making of forex contracts and soliciting funds for the purpose of purchasing or selling any forex contracts. At the hearing, counsel for Defendants Servider and Ekdeshman agreed not to contest the relief requested in the Show Cause Motion and the Complaint. Counsel for Defendant Ekdeshman also agreed not to contest the Contempt of Court claim. Defendant EJS had no counsel at the hearing and failed to retain counsel throughout this proceeding.

On June 3, 2014, the Court issued an "Order of Permanent Injunction on Contempt of Court Claim Against Alex Vladimir Ekdeshman, Preliminary Injunction on All Other Claims and Other Equitable Relief" ("June 3rd Order"). In the June 3rd Order, the Court held, in pertinent part, that the Commission made a proper showing by clear and convincing evidence that Defendant Ekdeshman was in contempt of court for 1) not trading EJS funds as promised; 2) misappropriating EJS customer funds; 3) failing to inform prospective EJS customers that the historical trading performance of EJS listed on its website was purely fictitious; 4) issuing false account statements to EJS customers; and 5) representing on EJS's website a fictitious trading performance.

Defendants Ekdeshman and EJS have failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, the Commission filed requests for entry of a clerk's default and supporting declarations against Defendants Ekdeshman and EJS and on October 24, 2014, the Clerk of this Court entered a default against Defendants Ekdeshman and EJS.

Relief Defendants Executive Services and Executive Management have failed to appear by new counsel as directed by this Court and thus have failed to otherwise defend pursuant to F. R. Civ. P. 55(a). Accordingly, after a request and supporting declaration filed by the

Commission, on May 21, 2015, the Clerk of this Court entered a certificate of default against Relief Defendants Executive Services and Executive Management.

The Commission has now moved this Court to grant final judgment by default against Defendants Ekdeshman and EJS, order permanent injunctive relief, and impose restitution, disgorgement and a civil monetary penalty pursuant to F. R. Civ. P. 55(b)(2). Entry of default judgment is left to the sound discretion of the trial court (*Palmieri v. Town of Babylon*, 277 Fed. Appx. 72, 74 (2d Cir. 2008); *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)), which is required to accept all factual allegations in the complaint as true and draw all reasonable inferences in the moving party's favor, but is also required to determine whether the factual allegations amount to a cause of action as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citations omitted).

The Commission has further moved this Court to grant final judgment by default against Relief Defendants Executive Services and Executive Management and order disgorgement of ill-gotten funds to which they are not entitled. Because Relief Defendants Executive Services and Executive Management have failed to "otherwise defend" by failing to retain and appear by counsel as directed by the Court (*see City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 130 (2d Cir. 2011); *Eagle Associates v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991)), entry of default judgement as to Relief Defendants Executive Services and Executive Management is proper.

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby:

**ORDERED** that the Plaintiff's Motion for Final Judgment by Default, Permanent

Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief against

Defendants EJS Capital Management, LLC and Alex Vladimir Ekdeshman and Relief

Defendants Executive Services and Executive Management is **GRANTED.** Accordingly, the

Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for

Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief

("Order") pursuant to Sections 6c and 6d of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein.

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Findings of Fact

#### The Parties

1.  Plaintiff Commodity Futures Trading Commission is an independent federal

regulatory agency that is charged by Congress with administering and enforcing the Act,

7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10

(2014).

2.  Defendant EJS Capital Management, LLC is a Nevada limited liability company

with a business address of 40 Wall Street, 28th Floor, New York, N.Y. 10005. EJS has never

been registered with the Commission in any capacity. Defendant EJS has not otherwise

appeared in this action and has no legal representation.

3.  Defendant Alex Vladimir Ekdeshman is an individual residing in Holmdel, New

Jersey. Ekdeshman is a principal and member of EJS, a signatory to the EJS bank accounts at

Bank of America and exercises control over EJS. Ekdeshman has never been registered with the

Commission in any capacity.

4.  Relief Defendant Executive Services of Florida, LLC is a Florida limited liability

company with a business address of 18101 Collins Avenue, North Miami Beach, Florida 33160.

6

Executive Services has received investor funds which were illegally solicited and misappropriated by Defendants EJS and Ekdeshman and it has no legitimate claim to these funds. Executive Services has never been registered with the Commission in any capacity.

5.   Relief Defendant Executive Management of Montana, Inc. is a Montana corporation with a business address of 18101 Collins Avenue, North Miami Beach, Florida 33160. Through Relief Defendant Executive Services, Executive Management has received investor funds which were illegally solicited and misappropriated by Defendants EJS and Ekdeshman and it has no legitimate claim to these funds. Executive Management has never been registered with the Commission in any capacity.

### Solicitation of Investors by Defendants EJS and Ekdeshman

6.   From at least April 2013 through May 1, 2014 ("the Relevant Period"), Defendants EJS and Ekdeshman and/or their agents solicited customers and prospective customers through cold calls made by their agents and through the Defendants' website. In these solicitations, Defendants EJS and Ekdeshman and/or their agents solicited the retail public to open leveraged, off-exchange forex trading accounts which Defendants EJS and Ekdeshman would then purportedly trade on behalf of customers.

7.   The "Performance Report" contained in Defendants EJS' and Ekdeshman's website stated that EJS achieved a 2011 Gross Return of 21.86 percent, a 2012 Gross Return of 30.47 percent, and a 2013 Gross Return of 76.71 percent. This trading record was false. Indeed, EJS has not conducted any trading at all. EJS did not even exist in 2011 and 2012, was not formed as a Nevada corporation until January 30, 2013, and did not open its bank accounts until March 2013.

8.      EJS customers, many of whom were not Eligible Contract Participants ("ECPs"),[1]

opened accounts with EJS using U.S. dollars in order to profit from forex speculative trading on

a leveraged basis.  However, no actual trading on behalf of EJS customers took place.

9.      During the Relevant Period, Defendants EJS and Ekdeshman's agents instructed

customers to wire their funds directly to a U.S. bank account in EJS's name that was controlled

by Ekdeshman, or to send a check by U.S. mail or FedEx to EJS's office. Once customers

opened an account with EJS, Defendants EJS and Ekdeshman provided customers with account

statements which listed various purported trades.

10.     Customers providing checks were instructed to make the checks payable to "EJS

Capital Management, LLC" and to send the checks to EJS's address at 40 Wall Street, 28th

Floor, New York, N.Y.  Customers wiring funds to EJS were told to send a wire transfer to the

EJS bank account  ending in 8535 at a Bank of America branch located at 29 Broadway, New

York, NY. The account ending in 8535 is in EJS's name, and Ekdeshman was one of only two

signatories on the account.  Accordingly, Ekdeshman controlled all deposits of customer funds

into the two accounts and all withdrawals of customer funds from the accounts.  Ekdeshman was

also in control of the day to day business operations of EJS.

### Fraud by Misrepresentations, Omissions and by Misappropriation

11.     Contrary to the claims made during the solicitations, Defendants EJS and

Ekdeshman have not managed or traded any customer accounts.  Instead, Defendants EJS and

Ekdeshman have misappropriated the customer funds.  Defendants EJS and Ekdeshman also

---

[1] In order to qualify as an ECP an individual must have amounts invested on a discretionary basis
the aggregate of which is in excess of (i) $10 million, or (ii) $5 million and who enters the
transaction in order to manage the risk associated with an asset owned or liability incurred, or
reasonably likely to be owned or incurred, by the individual. Section 1a(18)(A)(xi) of the Act, 7
U.S.C. § 1a(18)(A)(xi) (2011).

failed to disclose to customers and prospective customers that they misappropriated customer funds.

12.     Between April, 2013 and May 1, 2014, at least 112 customers sent EJS wire transfers and checks in various amounts ranging between $1,000 and $249,000 to open or to further fund their managed accounts with EJS.  Defendants Ekdeshman and EJS have received and accepted $2,582,964.92 in funds sent by customers and deposited into the Bank of America account.

13.     Out of the $2,582,964.92 received from EJS customers for forex trading purposes, a total of $256,476.61 has been returned thus far to customers, including five customers who received fictitious profits.  The total funds received by Defendants from EJS customers and not returned to EJS customers is $2,354,608.36.

14.     Defendants EJS and Ekdeshman knowingly or willfully misappropriated $2,354,608.36 of EJS customer funds for unauthorized purposes, such as the payment of fictitious "profits" to 5 of the EJS customers, cash withdrawals, rent payments, travel expenses, and charges at grocery stores, department stores, electronics stores and restaurants, and to pay Relief Defendants.  Defendants EJS and Ekdeshman did not disclose to customers that their funds would be used for these payments.

15.     Defendants EJS and Ekdeshman knowingly, willfully, or with reckless disregard for the truth thereof, have failed to disclose to customers and prospective customers that Defendants:  (1) have failed to trade their funds as promised; (2) misappropriated customer funds to pay for personal and business expenses; (3) did not inform prospective customers that the historical trading performance on the website, www.ejsfinancial.com, was fictitious; (4) issued

9

false account statements to customers; and (5) represented on their website a fictitious trading performance.

16.     Defendants EJS and Ekdeshman knowingly, willfully, or with reckless disregard for the truth, falsely represented their past trading performance when soliciting customers to invest with EJS.

**Fraud by Issuing False Statements**

17.     Defendants EJS and Ekdeshman issued account statements to EJS customers which listed purported profits from forex trading activity, knowing that funds were not used for trading purposes and no profits were generated.

**Fraud by Commodity Trading Advisors and Failure to Register with the Commission**

18.     Customers were informed by Defendants EJS' and Ekdeshman's agents and in their account paperwork that their funds would be used by EJS to trade forex on their behalf and that EJS would manage the forex trading. EJS Customers executed Limited Powers of Attorney in which EJS identified itself as the Trading Agent responsible for purchasing and selling foreign currencies on the OTC foreign exchange markets on margin on behalf of its customers, thus giving EJS discretionary trading authority in the individual customer accounts. EJS charged a fee based on the amount that the accounts purportedly profited.

19.     EJS engaged in fraudulent omissions, misrepresentations, misappropriation and issuance of false statements in its role as a CTA by the use of the mails or other means or instrumentalities of interstate commerce.

20.     EJS made use of the mails or any means of interstate commerce in connection with its business as a CTA, but failed to register with the Commission as a CTA.

**Payments to Relief Defendants**

10

21.     Relief Defendant Executive Services received a total of $555,000 in checks and wire transfers from EJS bank accounts and transferred approximately $544,400 of that amount to two bank accounts in the name of Relief Defendant Executive Management at Citibank. Of the funds received by Relief Defendant Executive Management, approximately $70,000 remained in one Citibank account and approximately $5,270 remained the other Citibank account as of March 31, 2014, and the remainder was transferred or had been used to pay Vilner's personal and purported business expenses.

22.     Relief Defendant Executive Services' bank account was almost entirely funded by deposits from the EJS bank account. In addition, Relief Defendant Executive Management's Citibank accounts were funded by deposits from Relief Defendant Executive Services' bank account.

23.     No funds from either Relief Defendant Executive Services or Executive Management's bank accounts were transferred back to the EJS bank accounts.

24.     Relief Defendants Executive Services and Executive Management have no legitimate claim to the funds they received, directly and indirectly, from EJS.

## B. Conclusions of Law

### Jurisdiction and Venue

25.     This Court has jurisdiction over this action and Defendants and Relief Defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

26.     The Commission has jurisdiction over the forex solicitations and transactions at issue in this case pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012).

27.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants EJS and Ekdeshman and Relief Defendants Executive Services and Executive Management reside or transact business in this jurisdiction and the acts and practices in violation of the Act and Regulations occurred, are occurring or are about to occur within this District, among other places.

### Fraud by Misrepresentations and Omissions, False Account Statements, and Misappropriation of Customer Funds

28.     By the conduct described in paragraphs 1 through 24 above, EJS and Ekdeshman cheated and defrauded, or attempted to cheat and defraud, willfully made and caused to be made false statements and willfully deceived, or attempted to deceive, their customers by, among other things,  knowingly or recklessly: not trading their funds as promised, misappropriating customer funds to pay for personal and business expenses, not informing prospective customer that the historical trading performance on EJS' website was purely fictitious, issuing false account statements to customers and by representing on EJS' website a fictitious trading performance in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2006 & Supp. V 2011).

### Violation of Regulation § 5.2(b), 17 C.F.R. § 5.2 (b)

29.     By the conduct described in paragraphs 1 through 24 above, Defendants EJS and Ekdeshman, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) cheated or defrauded or attempted to cheat or defraud any person; (2) willfully made or cause to be made to

any person any false report or statement or cause to be entered for any person any false record; or (3) willfully deceived or attempted to deceive any person by any means whatsoever by: by, among other things: (1) not trading EJS customer funds as promised; (2) misappropriating customer funds to pay for personal and business expenses; (3) not informing prospective customers that the historical trading performance on the website, www.ejsfinancial.com, was purely fictitious; (4) issuing false account statements to customers and by (5) representing on their website a fictitious trading performance in violation of Regulation§ 5.2(b), 17 C.F.R. § 5.2(b).

**Fraud by a Commodity Trading Advisor**

30.     By the conduct described in paragraphs 1 through 24, Defendants EJS and Ekdeshman, by use of the mails or other means or instrumentalities of interstate commerce, while acting as a CTA, directly or indirectly employed a device, scheme, or artifice to defraud investors or engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon customers by, among other things: not trading their funds as promised, misappropriating customer funds to pay for personal and business expenses, not informing prospective customer that the historical trading performance on EJS' website was purely fictitious, issuing false account statements to customers and by representing on EJS' website a fictitious trading performance, in violation of Sections 4$o$(1)(A) and (B) of the Act, 7 U.S.C. § 6$o$(1)(A) and (B) (2012).

**Failure to Register with the Commission**

31.     By the conduct described in paragraphs 1 through 24, during the relevant period, Defendant EJS engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any

13

contract of sale of a commodity for future delivery, security, futures product, foreign currency as described in Section 2(c)(2)(C)(i), or swap for compensation or profit, thus making it a commodity trading advisor. Further, EJS made use of the mails or any means of interstate commerce in connection with its business as a CTA, while failing to register, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012). During the relevant period, EJS was not exempt from registering as a CTA. During the relevant period, EJS exercised discretionary trading authority or obtained written authorization to exercise discretionary trading authority over customer accounts of customers who were not ECPs in connection with retail forex transactions. As such, EJS was required to register as a CTA pursuant Regulation 5.3(a)(3), 17 C.F.R. § 5.3(a)(3) and failed to do so, in violation of Regulation 5.3(a)(3).

**Ekdeshman Is Liable for Defendant EJS's Violations as Controlling Persons of EJS**

32.     Defendant Ekdeshman controlled EJS, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, EJS's act or acts in violation of the Act and Regulations; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012), Ekdeshman is liable for EJS's violations of Sections 4b(a)(2)(A)-(C), 4m(1), and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6m(1), and 7 U.S.C. § 6o(1)(A) and (B), and Regulation §§ 5.2(b) and 5.3(a)(3), 17 C.F.R. § 5.2(b) and § 5.3(a)(3).

**EJS Is Liable as Principal for the Acts of Its Agent Ekdeshman**

33.     The foregoing acts, omissions, and failures of Defendant Ekdeshman occurred within the scope of his employment, office, or agency with EJS; therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2014), EJS is liable for Ekdeshman's acts, omissions, and failures in violation of Sections 4b(a)(2)(A)-

14

(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), Regulation§ 5.2(b), 17 C.F.R. § 5.2(b), Sections

4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B).

34.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that

Defendants Ekdeshman and EJS will continue to engage in the acts and practices alleged in the

Complaint and in similar acts and practices in violation of the Act and Regulations.

### Relief Defendants Executive Services and Executive Management's Failure to Obtain Legal Representation

35.     Relief Defendant Executive Services and Executive Management have failed to

obtain legal representation within the time they were directed to do so by the Court and at any

point subsequently in this proceeding and "'[i]t is settled law that a corporation [such as

Executive Services and Executive Management] may not appear in a lawsuit against it except

through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default

judgment may be entered against it,'" *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 192

(2d Cir. 2006) (quoting *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir.1975)).

### Relief Defendants Executive Services and Executive Management Must Disgorge Ill-Gotten Funds

36.     The Court may grant equitable relief against a relief defendant if it is established

that the relief defendant possesses property or profits illegally obtained, and the relief defendant

has no legitimate claim to them. *See SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)

("Federal courts may order equitable relief against a person who is not accused of wrongdoing in

a securities enforcement action where that person: (1) has received ill-gotten funds; and (2) does

not have a legitimate claim to those funds"); *CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d

187,192 n.4 (4th Cir. 2002) ("it is entirely appropriate to allow the Commission to proceed

against nominal defendants under the same circumstances in which the SEC could proceed

against such defendants") (*citing SEC v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998)).  Where

disgorgement by a relief defendant is ordered, funds may be used to compensate customers.  *See*

*FTC v. Think Achievement, Inc.*, 144 F. Supp.2d 1013, 1022 (N.D. Ind. 2000).  Relief Defendants

Executive Services and Executive Management received $555,000 of property or illegally

obtained property from EJS to which they have no legitimate claim and are therefore required to

disgorge that amount.

## II.
## ORDER FOR RELIEF

### IT IS HEREBY ORDERED THAT:

37.     The Commission's Motion for Final Judgment by Default, Permanent Injunction,

Civil Monetary Penalties, and Other Statutory and Equitable Relief against Defendants and

Relief Defendants is GRANTED.

### IT IS HEREBY ORDERED THAT:

#### A.  Permanent Injunction

38.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c

of the Act, 7 U.S.C. § 13a-1 (2012), Defendants EJS and Ekdeshman are permanently restrained,

enjoined and prohibited from directly or indirectly:

a.      cheating or defrauding or attempting to cheat or defraud other persons, willfully

        making or causing to be made to other persons any false report or statement or

        willfully entering or causing to be entered for another person any false record, or

        willfully deceiving or attempting to deceive other persons in connection with any

        order to make, or the making of, any contract of sale of any commodity for future

        delivery in violation of  Sections 4b(a)(2)(A)-(C) of the Act 7 U.S.C. §§

        6b(a)(2)(A)-(C)(2012).

16

b.      by use of the mails or by any means or instrumentality of interstate commerce,

directly or indirectly, in or in connection with any retail forex transaction,

cheating or defrauding, or attempting to cheat or defraud, or willfully deceiving,

or attempting to deceive other persons in violation of Regulation 5.2 (b), 17

C.F.R. § 5.2(b).

c.      by use of the mails or other means or instrumentalities of interstate commerce,

while registered or acting as a CTA, to wit, for compensation or profit, engaging

in the business of advising others, either directly or through publications, writings,

or electronic media, as to the value of or the advisability of trading in any contract

of sale of a commodity for future delivery, security futures product, swap, or

foreign currency (as described in 7 U.S.C. §2(c)(2)(C)(i)) ("forex contracts"),

directly or indirectly employing a device, scheme, or artifice to defraud other

persons or engaging in transactions, practices, or a course of business which

operate as a fraud or deceit upon other persons in violation of Sections 4*o*(1)(A)

and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2012).

d.      engaging in the business of advising others, either directly or through

publications, writings, or electronic media, as to the value of or the advisability of

trading in any contract of sale of a commodity for future delivery, security futures

product, swap, or forex contract, for compensation or profit and making use of the

mails or any means or instrumentality of interstate commerce in connection with

their business as a CTA, while failing to register with the Commission as a CTA,

in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012); and

e. exercising discretionary trading authority or obtaining written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an ECP as defined in Section 1a(18) of the Act, in connection with retail forex transactions in violation of Regulation § 5.3(a)(3), 17 C.F.R. § 5.3(a)(3).

39. Defendants EJS and Ekdeshman are also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014) for their own personal account or for any account in they have a direct or indirect interest;

c. Having any commodity interests traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

18

g.     Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2014)), agent or any other officer or employee of any person (as that

term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered,

exempted from registration or required to be registered with the Commission

except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

## B. Restitution

40.     Defendants EJS and Ekdeshman shall pay jointly and severally restitution in the amount of $2,354,608.36 ("Restitution Obligation"), plus post judgment interest. Post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

41.     To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall collect restitution payments from Defendants EJS and Ekdeshman as set forth in Paragraphs 42 and 57-59, below, and make distributions as set forth below when directed to do so by further order of this Court. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

42.     Defendants EJS and Ekdeshman shall make Restitution Obligation payments under this Order to the Monitor in the name "EJS – Restitution Fund" and shall send such Restitution Obligation payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to the Office of Administration, National

Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under

cover letter that identifies the paying Defendants and the name and docket number of this

proceeding. EJS and Ekdeshman shall simultaneously transmit copies of the cover letter and the

form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

43.     The Monitor shall oversee the Restitution Obligation and shall have the discretion

to determine the manner of distribution of such funds in an equitable fashion to Defendants EJS'

and Ekdeshman's customers identified by the Commission or may defer distribution until such

time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation

payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the

administrative cost of making a distribution to eligible customers is impractical, the Monitor

may, in its discretion, treat such restitution payments as civil monetary penalty payments, which

the Monitor shall forward to the Commission following the instructions for civil monetary

penalty payments set forth below.

44.     Defendants EJS and Ekdeshman shall cooperate with the Monitor as appropriate

to provide such information as the Monitor deems necessary and appropriate to identify

Defendants' customers to whom the Monitor, in its sole discretion, may determine to include in

any plan for distribution of any Restitution Obligation payments. EJS and Ekdeshman shall

execute any documents necessary to release funds that they have in any repository, bank,

investment or other financial institution, wherever located, in order to make partial or total

payment toward the Restitution Obligation.

45.     The Monitor shall provide the Commission at the beginning of each calendar year

with a report detailing the disbursement of funds to Defendants EJS' and Ekdeshman's

customers during the previous year.  The Monitor shall transmit this report under a cover letter

that identifies the name and docket number of this proceeding to the Chief Financial Officer,

Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW,

Washington, D.C. 20581.

46.     The amounts payable to each customer shall not limit the ability of any customer

from proving that a greater amount is owed from Defendants EJS or Ekdeshman or any other

person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of

any customer that exist under state or common law.

47.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of

Defendants EJS and Ekdeshman who suffered a loss is explicitly made an intended third-party

beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction

of any portion of the restitution that has not been paid by EJS and Ekdeshman to ensure

continued compliance with any provision of this Order and to hold EJS and Ekdeshman in

contempt for any violations of any provision of this Order.

48.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of EJS

and Ekdeshman's Restitution Obligation, such funds shall be transferred to the Monitor for

disbursement in accordance with the procedures set forth above.

49.     Defendants EJS and Ekdeshman will obtain a dollar-for-dollar credit against their

Restitution Obligation as a result of any payments made in satisfaction of their disgorgement

obligations (described below).  Further, EJS and Ekdeshman will also obtain a dollar-for-dollar

credit against their restitution obligations as a result of any funds disgorged from the Relief

Defendants Executive Services and Executive Management which are used for the purpose of

paying restitution.

### C. Civil Monetary Penalty

50.    EJS and Ekdeshman shall pay, jointly and severally, a civil monetary penalty in

the amount of seven million sixty-three thousand eight hundred twenty-five dollars and eight

cents, $7,063,825.08 ("CMP Obligation"), calculated as triple the monetary gain to Defendants

as measured by the amount of funds they misappropriated of $2,354,608.36, pursuant to Section

6c(d)(1)(A) of the Act, 7 U.S.C. § 13a-1(d)(1)(A), plus post-judgment interest.  Post-judgment

interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and

shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order

pursuant to 28 U.S.C. § 1961 (2012).

51.    EJS and Ekdeshman shall pay their CMP Obligation by electronic funds transfer,

U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment

is to be made other than by electronic funds transfer, then the payment shall be made payable to

the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, EJS and Ekdeshman shall contact Nikki

Gibson or her successor at the address above to receive payment instructions and shall fully

comply with those instructions.  EJS and Ekdeshman shall accompany payment of the CMP

Obligation with a cover letter that identifies EJS and Ekdeshman and the name and docket

number of this proceeding.  EJS and Ekdeshman shall simultaneously transmit copies of the

cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**D. Disgorgement**

52.     EJS and Ekdeshman shall pay jointly and severally disgorgement in the amount of two million three hundred fifty-four thousand six hundred eight dollars and thirty six cents $2,354,608.36 ("Defendants' Disgorgement Obligation"), as measured by the gains received by the Defendants in connection with their violations of the Act, pursuant to Section 6c(d)(3)(B) of the Act, 7 U.S.C. § 13a-1(d)(3)(B), plus post-judgment interest. Post-judgment interest shall accrue on the Defendant's Disgorgement Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

53.     Relief Defendants Executive Services and Executive Management shall pay jointly and severally disgorgement in the amount of $555,000 ("Relief Defendants' Disgorgement Obligation"), as measured by the funds received by Relief Defendants Executive Services and Executive Management from Defendants to which they had no legitimate claim, plus post-judgment interest. Post-judgment interest shall accrue on this Relief Defendants' Disgorgement Obligation commencing on the date of the entry of this Order and shall be determined using the Treasury Bill rate prevailing on the date of the entry of this Order pursuant to 28 U.S.C. § 1961.

54.     All disgorgement payments made by Defendants EJS and Ekdeshman and Relief Defendants Executive Services and Executive Management shall first be used to pay restitution to the defrauded EJS customers. Disgorgement payments under this Order shall be made to the Monitor in the name "EJS – Restitution Fund" as stated in Paragraphs 40-49 above.

23

55.    Once restitution is completely satisfied, Defendants EJS and Ekdeshman and

Relief Defendants Executive Services and Executive Management shall pay the remainder of

their respective Disgorgement Obligations by electronic funds transfer, U.S. postal money order,

certified check, bank cashier's check, or bank money order.  If payment is to be made other than

by electronic funds transfer, then the payment shall be made payable to the Commodity Futures

Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables
> DOT/FAA/MMAC/AMZ-341
> CFTC/CPSC/SEC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> (405) 954-7262 office
> (405) 954-1620 fax
> nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants EJS and Ekdeshman or Relief

Defendants Executive Services and Executive Management shall contact Nikki Gibson or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions.  Defendants EJS and Ekdeshman or Relief Defendants Executive Services and

Executive Management shall accompany payment of their respective Disgorgement Obligations

with a cover letter that identifies Defendant EJS or Defendant Ekdeshman or Relief Defendants

Executive Services and Executive Management and the name and docket number of this

proceeding.  Defendants EJS and Ekdeshman or Relief Defendants Executive Services and

Executive Management shall simultaneously transmit copies of the cover letter and the form of

payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

56.     Defendants EJS and Ekdeshman will obtain a dollar-for-dollar credit against their disgorgement obligations as a result of any payments made in satisfaction of their restitution obligations.  Defendants EJS and Ekdeshman also will obtain a dollar-for-dollar credit against their disgorgement obligations as a result of any funds disgorged from Relief Defendants Executive Services and Executive Management.

**E.     Provisions Related to Monetary Sanctions**

57.     The Monitor, previously appointed by this Court's Order dated March 17, 2015 (ECF Entry No. 46), shall open a custodial bank account titled "EJS Restitution Fund" ("NFA EJS Restitution Funds Account").

58.     Upon entry of this Order, the Commission shall provide Bank of America ("Bank of America") and Citibank, N.A.  ("Citibank") with a copy of this Order.

59.     Bank of America is directed to liquidate and release all funds in any account identified below and to convey forthwith, by wire transfer, all funds in these accounts to NFA EJS Restitution Funds Account:

    a.     EJS Capital Management LLC account #xxxxxxxx8564;

    b.     EJS Capital Management LLC account #xxxxxxxx8535; and

    c.     Executive Services of Florida LLC account #xxxxxxxx6370.

60.     Citibank is directed to liquidate and release all funds in any account identified below and to convey forthwith, by wire transfer, all funds in these accounts to NFA EJS Restitution Funds Account:

    a.     Executive Management Inc. account #xxxxxx3163; and

    b.     Executive Management Inc. account #xxxxxx6469.

61.     Alpari UK is directed to liquidate and release all funds in any account identified below and to convey forthwith, by wire transfer, all funds in these accounts to NFA EJS Restitution Funds Account:

   a.     Executive Management Inc. account #xxxx3235.

62.     The Monitor shall notify the Commission, to wit, Steven Ringer and Elizabeth C. Brennan, upon receipt of said transfers to the NFA EJS Restitution Funds Account detailing the funds received in a report under a cover letter identifying the name and docket number of this proceeding.  The Commission shall, in turn, notify the Court.

63.     The Monitor shall maintain the funds in the NFA EJS Restitution Funds Account until further order of the Court.

64.     Defendant EJS and Relief Defendants Executive Services and Executive Management, Bank of America, and Citibank shall cooperate fully and expeditiously with the Commission and the Monitor in the liquidation, release and transfer of these funds.  It is further ordered that, subsequent to the transfer of said funds from the above-listed accounts, said accounts will no longer be encumbered pursuant to Paragraph 21(a) of Statutory Restraining Order the and Paragraph 28 of the Preliminary and Permanent Injunction.

65.     The Court's Statutory Restraining Order and Permanent and Preliminary Injunction Order except as modified herein shall remain in full force and effect until further order of the Court.

66.     Partial Satisfaction:  Acceptance by the Commission or the Monitor of any partial payment of Defendants EJS and Ekdeshman's Restitution Obligation, Disgorgement Obligation, or CMP Obligation and/or Relief Defendants Executive Services and Executive Management's Disgorgement Obligation, shall not be deemed a waiver of their obligation to make further

payments pursuant to this Order, or a waiver of the Commission's right to seek to compel

payment of any remaining balance.

### F. Miscellaneous Provisions

67.     Notice: All notices required to be given by any provision in this Order shall be

sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Manal M. Sultan, Deputy Director
> Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 140 Broadway, 19th Floor
> New York, NY  10005

Notice to NFA:

> Daniel Driscoll, Executive Vice President, COO
> National Futures Association
> 300 S. Riverside Plaza, Suite 1800
> Chicago, IL 60606-3447

All such notices to the Commission or the NFA shall reference the name and docket number of

this action.

68.     Change of Address/Phone: Until such time as Defendants EJS and Ekdeshman

and Relief Defendants Executive Services and Executive Management satisfy in full their

Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Order,

Defendants EJS and Ekdeshman and Relief Defendants Executive Services and Executive

Management shall provide written notice to the Commission by certified mail of any change to

their telephone number and mailing address within ten (10) calendar days of the change.

69.     Invalidation: If any provision of this Order or if the application of any provision

or circumstance is held invalid, then the remainder of this Order and the application of the

provision to any other person or circumstance shall not be affected by the holding.

70.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants EJS and Ekdeshman or Relief Defendants Executive Services and Executive Management to modify, or for relief from, the terms of this Order.

71.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants EJS and Ekdeshman and Relief Defendants Executive Services and Executive Management, upon any person under the authority or control of EJS and Ekdeshman, Executive Services or Executive Management, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants EJS and Ekdeshman or Relief Defendants Executive Services and Executive Management.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Defendants EJS Capital Management, LLC and Alex Vladimir Ekdeshman and Relief Defendants Executive Services of Florida LLC and Executive Management of Montana Inc.* forthwith and without further notice.

**IT IS SO ORDERED** on this _18_ day of _December_, 2015.

_____
**UNITED STATES DISTRICT JUDGE**